UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS

-------------------------------------------------- x

In re  TKO Sports Group USA, Limited    :     Chapter 11

           Debtor.    :     Case No. 05-48509-H1-11

                                     :

                                     :

-------------------------------------------------- x

## FIRST INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, AND (II) SCHEDULING  A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(c)
**[Docket #5]**

Upon the motion (the "Motion") dated October 11, 2005 of TKO Sports Group USA, Limited, a Texas Corporation ("TKO"), as debtor and debtor-in-possession herein (collectively, the "Debtor") seeking entry of first interim order ("First Interim Order") pursuant to sections 363(c)(2) and (e) of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code") and Rule 4001(b)(i) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the use of cash collateral of the  Lender (as defined below) subject to security interests and replacement liens in favor of Lender pending a final hearing on the Motion (the "Final Hearing"), seeking entry of an  interim order (the " Interim Order") requesting this Court's authorization pursuant to sections 364(c)(1) of the Bankruptcy Code Rules 2002, 4001(c) and 9014 of the Bankruptcy Rules for the Debtors, *inter alia,*  to grant security interests in and liens on all of the Debtors' currently owned or after-acquired property and the proceeds thereof, except as provided herein, in favor of the Lender, in order to

5

secure the Debtor's obligations to it, which security interests and liens are senior to any and all other security interests and liens except for personal property taxes and as provided herein and subject to the Carve-Out (the "Postpetition Liens"); and (C) in accordance with Bankruptcy Rule 4001(c)(2), requesting this Court to schedule   a final hearing (the "Final Hearing") and approve notice with respect thereto; and the Court having considered the Motion   and, in accordance with Bankruptcy Rule 4001(c), requisite notice of the Motion having been provided; and a hearing to consider the interim relief requested in the Motion having been held and concluded (the "Interim Hearing"); and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the estates pending  the Final Hearing and otherwise is in the best interests of the Debtors and their creditors and is essential for the continued operation of the Debtors' businesses; and upon consideration of the evidence presented or proffered at the Interim Hearing; and after due deliberation and consideration and good and sufficient cause appearing therefor

#### IT IS HEREBY FOUND that:

A. On October 11, 2005 (the "Petition Date"), the Debtor filed a voluntary petition for relief with this Court under Chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").  The Debtor is continuing in possession of its property, and operating and managing its business, as debtor-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.  This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion presents a core proceeding as defined in 28 U.S.C. § 157(b)(2).

C.  Pursuant to the  Commitment Agreement and the Security Agreement (the "Prepetition Loan Agreement"),  between TKO Sports Group Canada, Inc. ("TKO Canada") and Bank of Montreal ("Lender" or "Prepetition Lender"),  and the Debtor's guaranty of the Prepetition Loan Agreement in favor of  Bank of Montreal as beneficiary, the prepetition loan was made by Bank of Montreal to TKO Sports Group Canada, Inc ("TKO Canada").

D.  As of the Petition Date, the Prepetition Lender holds a claim for approximately $5,201,951.27 plus interest, fees and expenses thereon (the "Prepetition Loan") based on a guaranty of a loan made to TKO Canada.  To secure the Prepetition Loan, TKO granted the Lender security interests and liens (collectively referred to herein as the "Prepetition Liens") as follows:  a first-priority security interest in and lien on substantially all of TKO's  assets including, without limitation, all of TKO's real property and fixtures and all goods (including without limitation, equipment and inventory), deposit accounts, investment property, accounts, chattel paper, instruments, documents, letter of credit rights, commercial tort claims, insurance claims, supporting obligations and liens, real estate interests and general intangibles of TKO of any nature, whether then owned or thereafter acquired and any proceeds, products, rents and profits of all of the foregoing (the "Prepetition Collateral"), with priority over all other liens except as otherwise provided in the Prepetition Credit Agreement or under applicable non-

bankruptcy law.     The Prepetition Collateral includes property constituting "cash collateral" as defined in section 363(a) of the Bankruptcy Code ("Cash Collateral").

E.  The Debtor or any Committee or Trustee will be provided sixty (60) days from the  filing of Lender's proof of claim to assert any claims or commence any causes of action against the Lender to object to or challenge (i) the validity, enforceability, extent, perfection or priority of the Prepetition Loan Agreement, Prepetition Liens in the Prepetition Collateral, or the Claim of Lender; (ii) the validity, allowability, priority, status or amount of the Lender's Claims;  or (iii) to assert any avoidance or subordination actions with respect to the Lender's Claims; provided, however, that if the Debtor or Committee or Trustee does not commence such an action or assert such a claim or no judgment is entered in an action so commenced or a claim so asserted with respect thereto, the Debtor will acknowledge and agree that (i) the Prepetition Liens are valid, binding, enforceable and perfected liens with priority over all other liens except as otherwise provided in the Prepetition Loan Agreement or under applicable non-bankruptcy law ; (ii) the Prepetition Loan constitutes legal, valid and binding obligations of the Debtor, enforceable in accordance with the terms of the Prepetition Loan Agreement (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code); (iii) no offsets, defenses or counterclaims of any kind to the Prepetition Loan exist ; and (iv) as of the Petition Date, the Debtor does not contest that the Prepetition Loan is an allowed secured claim within the meaning of section 506 of the Bankruptcy Code in the approximate amount of $5,201,951.27 million plus additional interest and fees, including, without limitation, attorneys' fees and related expenses, and

other charges owing in respect thereof. The time restrictions set forth in this paragraph may be extended by written agreement of the Lender. Any Committee is hereby empowered to commence an action against Lender to challenge Lender's lien or assert actions against Lender or its affiliates under Chapter 5 of the Bankruptcy Code, consistent with its rights under the Bankruptcy Code.

F. Pursuant to sections 361, 362, and 363 of the Bankruptcy Code, (a) the Prepetition Lender is entitled to adequate protection of its interest in the Prepetition Collateral, including for the Debtor's use of Cash Collateral, for any diminution in the value of the Prepetition Collateral (including Cash Collateral), resulting from the Debtor's use, sale or lease of the Prepetition Collateral, the imposition of the automatic stay and the priming of the Prepetition Liens as described below, and including for the Debtor's use of Cash Collateral, and the imposition of the automatic stay. The use of cash collateral will enable the Debtor to continue operating their businesses and thereby preserve the value of the Prepetition Collateral during the pendency of the Chapter 11 case.

G. The Debtor operates as a manufacturer, retailer and wholesaler of boxing equipment and other athletic equipment to the retail market. An immediate need exists for the Debtor to obtain funds with which to purchase inventory (especially in anticipation of the Christmas and New Year's seasons), continue their business operations, and administer and preserve the value of their estates. The ability of the Debtor to finance their operations requires the use of Cash Collateral of the Prepetition Lender, absent which immediate and irreparable harm will result to the Debtor, its estate, and its creditors and the possibility for a successful reorganization.

H.  Upon entry of this Interim Order, the Debtor seeks to use Cash Collateral for a Specified Period (defined below).  Entry of this Interim Order is necessary for the Debtor to avoid immediate and irreparable harm to the estates pending a second interim hearing and/or a final hearing on the Motion.  In the absence of the authorized use of Cash Collateral, the continued operation of the Debtor's businesses would not be possible.  The Debtor does not have sufficient available sources of working capital and financing to operate its business in the ordinary course of business or maintain its property in accordance with state and federal law without use of cash collateral.  The Debtor's ability to maintain business relationships with it's vendors, suppliers and customers, to pay its employees and otherwise finance its operations is essential to the Debtor's continued viability.

I.  Use of cash collateral of Lender is not otherwise available without (i) the granting to the Lender a first-priority replacement security interest in all of the Debtor's assets (except Avoidance Actions) and (ii) the granting to the Lender of adequate protection, replacement liens and super priority claims, pursuant to sections 361, 362 and, 363 of the Bankruptcy Code.

J.  Upon entry of this Interim Order, the Debtor seeks authority to (a) use cash collateral and proceeds to fund and support the Debtor's operations in accordance with the Budget (as defined herein), and all on the terms described herein.

K.  The terms of this Interim Order are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with their fiduciary duties.  The uses of Cash Collateral authorized herein are supported by reasonably equivalent value and fair consideration and have been negotiated in good faith and at arm's length among the

Debtor and the Lender. Any Cash Collateral used by the Debtor's pursuant to the this order shall be deemed to have been extended, issued, made, advanced or, as the case may be, permitted to be used in good faith by the Lender.

L. Notice of this Interim Hearing and the entry of this Interim Order has been properly provided to (i) the Office of the United States Trustee, (ii) the holders of the twenty (20) largest prepetition unsecured claims against the Debtors' estates, Notice of the Motion and the relief requested thereby have been given in accordance with Bankruptcy Rule 4001, and is sufficient under the Bankruptcy Code, including, without limitation, sections 102(a) of the Bankruptcy Code, and no other notice need be given for entry of this First Interim Order.

M. Based upon the foregoing findings and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor

**IT IS HEREBY ORDERED** that:

1. The Motion is granted, subject to the terms and conditions set forth in this Interim Order.

2. *Authorized Cash Collateral Use*. The Debtor is authorized to use Cash Collateral for the period from the Petition Date until October 28, 2005 (the "Specified Period"). Except as otherwise expressly provided herein, Cash Collateral may be used solely up to the amounts, at the times and substantially for the purposes identified in the budget (the "Cash Collateral Budget") attached hereto, *provided, however*, that the Debtor may vary any line item by 10% and roll over any unused amounts during the Specified Period, from a current week to the next week in strict accordance with the Budget, and

*weekly*

provided further that in no event shall the Cash Collateral used during the Specified Period exceed $ 185,900 in the aggregate, for budgeted expenses plus ten percent, subject to the receipt of cash receipts as reflected on the Budget. The right of the Debtors to use Cash Collateral, notwithstanding anything to the contrary herein, shall terminate upon no later than October 28, 2005 absent further order of the Court.

3. *Adequate Protection for Use of Cash Collateral*. Pursuant to sections 361 and 363(e) of the Bankruptcy Code, as adequate protection to, the Prepetition Lenders for the Debtors' use of Cash Collateral and other use or diminution in value of the Prepetition Collateral arising on account of the Debtors' use thereof, the Debtors (a) hereby grant to the Prepetition Lender, continuing, valid, binding, enforceable and perfected postpetition first-priority security interests in and replacement liens on Replacement Collateral to the extent of diminution in value of pre-petition collateral ("Adequate Protection Liens"), The Replacement Collateral comprises all post-petition Accounts Receivable, Inventory  and other assets of the Debtor, to the extent of diminution of the collateral securing the Prepetition Liens.

4. *Cash Collateral Adequate Protection Liens*.  The Adequate Protection Liens (subject to the Carve-Out), shall be equivalent to liens granted under sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code  are first, prior, perfected, and superior to any other security, mortgage, or collateral interest (except personal property taxes) in or lien on or claim to the Replacement Collateral during the Specified Period.  . Notwithstanding the expiration of the Specified Period for use of Cash Collateral, the Adequate Protection Liens on Replacement Collateral shall survive with respect to the Prepetition Loan. .

5. *Validity, Perfection and Priority of Cash Collateral Adequate Protection Liens.*  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Adequate Protection Liens without the necessity of filing or recording any financing statement or other instrument or document which may otherwise be required under the law of any jurisdiction, or the taking of any other action to validate or perfect the Adequate Protection Liens, or to entitle the Prepetition Lenders to the priorities granted herein, provided, however, that the Debtor or the Lender may execute and the  may file or record financing statements or other instruments to evidence and to perfect the Adequate Protection Liens, and provided, further, however, that no such filing or recordation shall be necessary or required in order to create or perfect such Adequate Protection Liens.

6. *Automatic Stay.*  The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby modified to permit the Debtors to grant the Adequate Protection Liens and to perform such acts as the Prepetition Lender may request to assure the perfection and priority of the Adequate Protection Liens.

7. *Application of Cash Collateral.*  Until the expiration of the Specified Period or any earlier termination of the Debtor's' authorization to use Cash Collateral hereunder, the Debtor shall:

a.    apply Cash Collateral and other sources of cash available to the Debtor hereunder to the expenses of operation of their business as provided in the Cash Collateral Budget and as otherwise permitted in Paragraph 2, and, in particular, as a first priority, to the payment as and when due of payroll and payroll taxes;

b.    serve the Lender and its counsel with a copy of each monthly report filed by the Debtor in this case as required by the Court, the United States Trustee or applicable law;

     c.     comply with the loan documentation comprising the Prepetition Agreement, except as otherwise modified herein.

     8. *Maintenance of Cash Collateral.* Until the Prepetition Indebtedness has been satisfied in full, and notwithstanding the expiration of the Specified Period or any earlier termination of the Debtor's authorization to use Cash Collateral hereunder, the Debtors shall insure the Prepetition Collateral and Replacement Collateral in amounts and for the risks, and by the entities, as required under the Prepetition Agreement;

     9. *Section 506(c) Waiver.* The Debtor shall not assert a claim under section 506(c) of the Bankruptcy Code for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization   the Lender,   upon, the Replacement Collateral, or the collateral subject to the liens that secure the Adequate Protection Obligations or for any expenses of the administration of the estate. The Lender shall not be subject to the equitable doctrine of "marshalling" or any other similar doctrine with respect to any Replacement Collateral.

     10. *Carve-Out.* As used in this First Interim Order, "<u>Carve-Out</u>" means, at any time of determination, the sum of (a) allowed administrative expenses payable pursuant to 28 U.S.C. §1930(a)(6) and (b) Priority Professional Expenses (as defined below), together subject to the Priority Expense Cap (as defined below). "<u>Priority Professional Expenses</u>" means allowable fees, costs and reasonable expenses of professionals retained by the Debtors and the official committee of unsecured creditors (the "<u>Committee</u>") in the Chapter 11 Case pursuant to sections 327 , 328 and/or 1103 of the Bankruptcy Code. "<u>Priority Expense Cap</u>" means upon the occurrence of the Termination Date, allunpaid Priority Professional Expenses (including holdbacks) up to an aggregate total of $100,000 ( which represents the amount of $60,000 for the Debtor and $40,000 for the Committee)  With

respect to clause (b) above, Priority Professional Expenses shall not include fees or expenses incurred by any Person, including the Debtors, the Committee, in (i) preventing, hindering or delaying the Lender's enforcement or realization upon any of the Replacement Collateral once an event of default has occurred, (ii) using or seeking to use Cash Collateral or selling Replacement Collateral, without the Lender's consent, except as authorized herein, (iii) incurring indebtedness without the Lender's consent, (iv) objecting to or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of the Prepetition Loan  or any mortgages, liens or security interests with respect thereto or any other rights or interests of  the Lender, or in asserting any claims or causes of action, including, without limitation, any Avoidance Actions or requests for equitable subordination, against the Lenders,   or (vi) investigating the validity, enforceability, extent, perfection and priority of the Prepetition Liens if another Person has already commenced or conducted an investigation of claims, causes of action and equitable theories for relief against the Prepetition Lender, and claims and causes of action challenging the validity, enforceability, extent, perfection and priority of the Prepetition Liens.  Professional fees shall be included as a line-item in the Budget in an amount of no more than $5000 per week, in a total amount not to exceed $100,000 total for professionals of the estate.

       11. *Permission to Pay Compensation.*  Nothing herein shall be construed as consent to the allowance of any Priority Professional Expenses or shall affect the right of the Lender, to object to the allowance and payment of such expenses.  Prior to the Termination Date, the Debtor shall be permitted to pay compensation and reimbursement of expenses (other than those excluded from Priority Professional Expenses) authorized to be paid under

sections 330 and 331 of the Bankruptcy Code or otherwise pursuant to an order of this Court, as the same may be due and payable in accordance with the Budget up to the amount of $100,000.

12. *Adequate Protection.*  (A) To the extent appropriate and necessary, as adequate protection of their interest in the Prepetition Collateral, including for any diminution in the value of the Prepetition Collateral (beyond that already provided for the use of Cash Collateral above) resulting from the Debtors' use, sale or lease of the Prepetition Collateral, the imposition of the automatic stay, and the Lender's consent to the Carve-Out, the Lender is hereby granted (i) Adequate Protection Liens in the form of additional and replacement security interests in and liens on the Replacement Collateral such Adequate Protection Liens being junior only to any perfected and non-avoidable security interests and liens to which the Postpetition Liens are junior, in all cases subject to the Carve-Out; and (B) to the extent appropriate and necessary, as adequate protection of its interest in the prepetition collateral, including for any diminution in the value of the Prepetition Collateral (beyond that already provided for the use of Cash Collateral above) resulting from the Debtor's use, sale or lease of the prepetition collateral and the imposition of the automatic stay.

13.    *Rights of Access to Information.*  The Debtor shall be and hereby are required to afford representatives, agents and/or employees of the Lender access to the Debtor's premises and its personnel and records, in whatever form maintained, and shall, and hereby are directed to, cooperate, consult with, and provide to such persons all such non-privileged information and information not subject to a binding confidentiality agreement. The Debtor shall permit any audit and appraisal of collateral and books and

records at any time by Lender and its representatives. Debtor agrees to provide Lender on a weekly basis, a cash receipts and disbursement report with a comparison to budget and an explanation of variances.

14. *"Equities of the Case"*. No person may assert an "equities of the case" claim under section 552(b) of the Bankruptcy Code against the Lender with respect to proceeds, product, offspring or profits of the Prepetition Collateral.

15. *Automatic Modification of Automatic Stay.* The automatic stay of section 362(a) of the Bankruptcy Code shall be, and it hereby is, modified to the extent necessary to permit the Lender, to receive, collect and apply payments and proceeds in respect of the collateral subject to Adequate Protection Liens in accordance with the terms and provisions of this Order..

16. *Remedies Upon Events of Default.* Upon the occurrence of an un-cured event of default under this Order, the Debtor's right to use Cash Collateral shall cease. Upon the occurrence of an event of default and following the giving of five business days' notice to the Debtors, the Committee, and the United States Trustee, the Lender shall have immediate relief from the automatic stay and may foreclose on all or any portion of the collateral , as permitted by applicable non-bankruptcy law (including exercise of rights of set-off During such five-business-day notice period,), unless the Debtor notifies the Court by pleading that the Debtor contests the validity of the Default. The Debtor is entitled to an emergency hearing with this Court for the sole purposes of contesting whether an event of default has occurred, but the Debtor shall have no right to seek to use cash collateral of the Lender except for the payment of payroll and payroll-related expenses during the period the dispute arises. Unless, during such period, this Court determines that an event of default has

not occurred, the automatic stay, as to the Lender shall automatically terminate at the end of such notice period. In the event that during such notice period this Court finds that an event of default has not in fact occurred, the rights and obligations of the shall continue in full force and effect.

17. *Modification of First Interim Order*. The Debtor shall not seek or consent to, directly or indirectly, (a) any modification, stay, vacation or amendment to this First Interim Order; (b) any order allowing use of cash collateral, except for the payment of payroll and payroll-related expenses, of the Lender without the Lender's prior written consent; (c) a priority claim for any administrative expense or unsecured claim against the Debtor (now existing or hereafter arising of any kind or nature whatsoever, including without limitation any administrative expense of the kind specified in sections 503(b), 506(c) or 507(b) of the Bankruptcy Code) equal or superior to the Adequate Protection Liens, other than the Carve-Out..

18. The provisions of this First Interim Order shall be binding upon and inure to the benefit of the Lender, and the Debtor and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor) whether in this Chapter 11 Case, in any subsequent cases under Chapter 7 of the Bankruptcy Code or upon dismissal of any such Chapter 11 or Chapter 7 cases.

19. In the event any or all of the provisions of this First Interim Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, no such modification, amendment or vacation shall affect the validity and enforceability of any advances made hereunder or lien or priority authorized or created hereby. Notwithstanding

any such modification, amendment or vacation, any (i) claim, including or (ii) lien, including without limitation, Postpetition Liens and Adequate Protection Liens hereunder arising prior to the effective date of such modification, amendment or vacation shall be governed in all respects by the original provisions of this First Interim Order, the Lender, shall be entitled to all of the rights, remedies, privileges and benefits thereof.

20. *Survival of Provisions in this Interim Order.* The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered , (a) converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code, or (b) dismissing any of the Chapter 11 Cases, and the terms and provisions of this Interim Order as well as the Adequate Protection Liens granted pursuant to this Interim Order shall continue in full force and effect notwithstanding the entry of such order, and such Claims, and Adequate Protection Liens shall maintain their priority as provided by this Interim Order until all the obligations of the Debtors to the Lender this Order are indefeasibly paid in full and discharged.

21. *No Waiver.* Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair (a) any of the rights of the Lender, under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of the Lender, to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases, conversion of any of the Chapter 11 Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans or (b) any of the rights, claims or privileges (whether legal,

equitable or otherwise) of the Lender.  No action taken by Lender under this paragraph acts

to estop the Committee in asserting its rights in accordance with the Bankruptcy Code or

applicable law

22. *Notice of Final Hearing.*  The Hearing to consider entry of the Final

Order approving the use of cash collateral  is scheduled for October 26, 2005, at

8:30 AM *Courtroom 600, in* at the United States Bankruptcy Court, Houston, Texas (the "Bankruptcy

Court").  On or before Oct 14, 2005, the Debtors shall serve, by United States

mail, first-class postage prepaid, notice of the entry of this First Interim Order and of the

Second Interim Hearing and the Final Hearing (the "Final Hearing Notice"), together with a

copy of this  Interim Order on: (a) the parties having been given notice of the Interim

Hearing; (b) any party which has filed prior to such date a request for notices with this

Court; (c) counsel for the Committee, if any.  The Final Hearing Notice shall state that any

party in interest objecting to the entry of the proposed Final Order shall file written

objections    with    the    Clerk    of    the    Bankruptcy    Court    no    later    than

noon on October 24, 2005, which objections shall be served so that the same are

received on or before such date by:  (a) Edward L. Rothberg and Hugh M. Ray, III, Weycer,

Kaplan Pulaski and Zuber, P.C., counsel to the Debtors; (b) Diana M. Woodman, Thompson

& Knight, 333 Clay St., Suite 3300, Houston, Texas, 77002, Counsel to Bank of Montreal;

and the Office of the United States Trustee, 515 Rusk, Houston, Texas 77002  Houston,

Texas, 77002, Attention: Stephen Statham, Esq.

23. *Nunc Pro Tunc Relief.*  This First Interim Order shall constitute findings

of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and

be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution thereof.,

provided, however, that notwithstanding the provisions of this First Interim Order, the Court

shall not be precluded from entering a Final Order inconsistent with the provisions herein

      24. *Jurisdiction.*  The Court has and will retain jurisdiction to enforce this

Order according to its terms.

Dated: October 12th, 2005

_____

UNITED STATES BANKRUPTCY JUDGE

APPROVED AS TO FORM AND SUBSTANCE:

Respectfully submitted,

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

By: _____

EDWARD L. ROTHBERG
State Bar No. 17313990
HUGH M. RAY, III
State Bar No. 24004246 / FBN 22090
MELISSA A. HASELDEN
State Bar No. 00794778
1400 Summit Tower
Eleven Greenway Plaza
Houston, Texas 77046
Telephone: (713) 961-9045
Facsimile: (713) 961-5341

ATTORNEYS FOR DEBTOR


THOMPSON & KNIGHT LLP

By: _____

DIANA M. WOODMAN
State Bar No. 21942300
diana.woodman@tklaw.com
Cara Clophus Wright
State Bar No. 24040704
cara.wright@tklaw.com
333 Clay Street, Suite 3300
Houston, Texas 77002
Telephone: (713) 654-8111
Facsimile: (713) 654-1871

ATTORNEYS FOR BANK OF MONTREAL

Cash Forecast for TKO Sports Group USA Limited
Prepared October 10, 2005

| Week Ending: | 10/14/2005 | 10/21/2005 |
|---|---|---|
| Opening Balance | 203,000 ~~50,000~~ | |
| Expected Cash Receipts | 80,000 | 200,000 |
| Cash Requirements: | | |
| Payroll | 92,000 | |
| Insurance: Medical | | 15,000 |
| Insurance: Liability | | |
| Insurance: Worker Comp. | | 6,000 |
| Insurance: Property | | |
| A One Rags | | 800 |
| Aaron Auther | | 1,650 |
| ABB | | |
| Action Rag | | 800 |
| Alliance Com. | | |
| Allstate Insurance | | |
| American Nat. Rag | | 800 |
| Travel (AMEX) | | |
| Auto Expense | | 5,000 |
| Avalanche | | 750 |
| Avaya Inc. | | |
| Avaya Financial | | |
| B-C Arts | | |
| Benco Systems | | |
| Brand Voice | | |
| Brink's Security | | |
| C&M Holdings | 20,761 | 29,733.00 |
| Cbeyond | | 1,500 |
| Central Transport | 7,500 | 7,500 |
| Ceryx | | 800 |
| Commissions: Reps | | |
| Commissions: House | | |
| CPI Office | | 4,000 |
| Daimler Chrysler | 558 | |
| Deloitte (Tax) | | 12,000 |
| Duty/Brokerage | | 6250 |
| eCommerce | | |
| Equipment Leases | | 6,000 |
| FDN | | 750 |
| Fed Ex | | 1,500 |
| First American | | |
| Ford Credit | | 600 |
| Geeng Wei | | 8,640 |
| Green's Blue | | 500 |



EXHIBIT

A

| | | |
|---|---|---|
| Hollister Place | 1,003 | |
| Inbound Freight | 5,000 | 5,000 |
| INRED | | 27,447 |
| Iron Body | | 3,506 |
| Jiuyi | | |
| JOC Haitong (JB) | | |
| Katmur (EVP) | 2,700 | |
| Legal (est) | 5,000 | 5,000 |
| Master's Bldg. Mtn. | | |
| Maintenance | 1,000 | 1,000 |
| Packaging (Boxes) | | 5,000 |
| Postage | | 3,000 |
| Poly Sharp | | 200 |
| Royalties | | |
| Reliant Energy | | 7,000 |
| SW Bell | | 600 |
| SBC Long Dist. | | 2,000 |
| Star Disposal | | 200 |
| Sunex | | |
| Sunteko | | |
| TIAA | | |
| UPS | 3,500 | 3,500 |
| Verison | | |
| Willson (CFO) | 4,666 | |

| | | |
|---|---|---|
| TOTAL Cash Needed | 143,688 | 174,026 |
| Cash Res./Def | ~~13,688~~ | 25,974 |